[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-13958

Non-Argument Calendar

————————————

JEFFERY DAY RIEBER,

Petitioner-Appellant,

*versus*

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:18-cv-00337-ACA

————————————

Before JORDAN, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

Jeffrey Rieber appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition challenging his conviction and death sentence. First, he asserts that his trial counsel rendered ineffective assistance at the guilt phase by not pursuing a theory that he lacked the requisite *mens rea* for intentional homicide. Second, he contends that his trial counsel rendered ineffective assistance at the penalty phase by not presenting evidence of his intoxication at the time of the offense.

Following a review of the record, and with the benefit of oral argument, we affirm the district court's denial of habeas corpus relief. Mr. Rieber has not shown that the Alabama courts unreasonably concluded that he failed to show prejudice from his counsel's allegedly deficient performance.

## I

The facts underlying Mr. Rieber's conviction are set out in *Rieber v. Alabama (Rieber I)*, 663 So. 2d 985, 987–88 (Ala. Crim. App. 1994), and *Rieber v. Hamm (Rieber VI),* No. 5:18-CV-00337-ACA, 2023 WL 5020257, at *1–*4 (N.D. Ala. Aug. 7, 2023). We summarize them below in the light most favorable to the prosecution.

## A

On the evening of October 9, 1990, just before 8:00 pm, Mr. Rieber entered a convenience store in Huntsville, Alabama. He

shot and killed the cashier, Glenda Phillips Craig, in the course of a robbery.

Security footage showed Mr. Rieber approach the counter and shoot Ms. Craig. Ms. Craig fell behind the counter where she lay while Mr. Rieber emptied the cash register. Before he left, Mr. Rieber leaned over the counter and shot Ms. Craig a second time, this time in the head. A few minutes later, another customer entered the store and found Ms. Craig alive. Ms. Craig, however, died later at the hospital.

Against his counsel's advice, Mr. Rieber rejected a plea offer that would have taken the death penalty off the table and proceeded to trial. At trial, counsel presented a mistaken identity defense, in part because such a theory aligned with what Mr. Rieber told police upon arrest: that he had not been involved in Ms. Craig's murder.

The state presented evidence that Mr. Rieber had purchased a gun the week before and had been seen "patrolling the store" a few days prior. The other evidence relevant to this appeal was a psychiatric report by Dr. Kathy Rogers regarding Mr. Rieber's mental state at the time of the offense. Dr. Rogers found no evidence of any major psychiatric disorder but noted a significant self-reported history of drug and alcohol abuse. Mr. Rieber had said that he consumed drugs and alcohol prior to the murder, and Dr. Rogers concluded that "a reported lack of memory for that period would have been related to substance abuse or deliberate

misrepresentation of [Mr. Rieber's] memory, although the former is more likely in my opinion." D.E. 16–86 at 130–31.

The jury found Mr. Rieber guilty of murder during a first-degree robbery, a capital offense under Alabama law. By a vote of seven to five, the jury recommended that Mr. Rieber be sentenced to life imprisonment without parole, but the jury's recommendation at that time was not binding upon the trial court. *See* Ala. Code § 13A-5-47(e) (1981). At sentencing, the trial court found two aggravating circumstances: (1) that the murder was committed during a first-degree robbery, and (2) that the offense was "especially heinous, atrocious, or cruel compared to other capital offenses." *Rieber VI,* 2023 WL 5020257, at *3. *See also* D.E. 16–62 at 93–95. The trial court also found two mitigating circumstances: (1) that Mr. Rieber had no significant criminal history, and (2) that he had a good reputation and good character before the offense. *See* D.E. 16–62 at 96–99. After weighing the aggravating and mitigating circumstances, the trial court overrode the jury's recommendation and imposed a sentence of death. *See* D.E. 16–62 at 100.

Mr. Rieber appealed his conviction and sentence, but the Alabama Court of Criminal Appeals affirmed. *See Rieber I,* 663 So. 2d at 998. The Alabama Supreme Court granted certiorari and also affirmed. *See Ex parte Rieber (Rieber II),* 663 So. 2d 999, 1015 (Ala. 1995). The United States Supreme Court denied a petition for writ of certiorari. *See Rieber v. Alabama (Rieber III),* 516 U.S. 995 (1995).

**B**

Mr. Rieber then sought post-conviction relief.  At the Rule 32 post-conviction evidentiary hearing, Mr. Rieber's counsel called fourteen witnesses, ten of whom testified as to Mr. Rieber's substance abuse history.  *See Rieber VI,* 2023 WL 5020257, at *4.  Two witnesses testified to seeing Mr. Rieber use drugs and alcohol at a party on the day of the murder but neither one said that he was high or intoxicated.  *See id.*; Rule 32 Order, *Rieber v. State* (*Rieber IV*), No. CC-90-2177.60, at 12–13 (Ala. Cir. Ct. Nov. 15, 2015).

Richard Kempaner, Mr. Rieber's trial counsel, testified at the Rule 32 hearing.  He explained, in part, that he considered a voluntary intoxication defense but chose to proceed with the mistaken identity defense after discussing it with Mr. Rieber (who did not suggest any other defense to him). *See Rieber IV* at 9–11.  Mr. Rieber did not testify at the hearing.

A psychiatrist, Dr. Alex Stalcup, also testified at the Rule 32 hearing on Mr. Rieber's behalf.  As relevant here, he explained the effects that drug use might have had on Mr. Rieber the night of the murder.  He believed that Mr. Rieber did not know what he was doing at the time of the murder.  *See id.* at 15.

The Rule 32 court denied Mr. Rieber post-conviction relief. The Rule 32 court concluded in part that Mr. Rieber had not proven his ineffective assistance of counsel claims.  *See Rieber IV* at 30–68.  The Alabama Court of Criminal Appeals affirmed in a 47-page unpublished decision.  *See Rieber v. State* (*Rieber V*), No. CR-15-0355, 265 So. 3d 318 (Ala. Crim. App. 2017) (table).

The district court denied Mr. Rieber's habeas corpus petition. *See Rieber VI,* 2023 WL 5020257, at \*30. We granted a certificate of appealability on two claims:

1. Whether trial counsel rendered ineffective assistance at the guilt phase by not pursuing a theory that Mr. Rieber lacked the requisite intent for intentional homicide.

2. Whether trial counsel rendered ineffective assistance at the penalty phase by not presenting evidence of Mr. Rieber's intoxication at the time of the offense.

We heard oral argument in August of 2024.

## II

A district court's denial of a habeas corpus petition under 28 U.S.C. § 2254 is subject to *de novo* review. *See Ward v. Hall,* 592 F.3d 1144, 1155 (11th Cir. 2010). Because Mr. Rieber filed his § 2254 petition after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs. AEDPA "establishes a highly deferential standard for reviewing state court judgments." *Parker v. Sec'y, Dep't of Corr.,* 331 F.3d 764, 768 (11th Cir. 2003).

We may grant habeas relief under AEDPA if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). "Clearly established Federal law" consists of "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" federal law when it reaches "a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . the state court decide[d] a case differently than [the] Court . . . on a set of materially indistinguishable facts." *Id.* at 412–13. An unreasonable application occurs when the state court correctly identified the "governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413.

In sum, § 2254(d)(1) sets "a highly deferential standard that is intentionally difficult to meet." *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1348 (11th Cir. 2019). Showing that a state court was wrong is not enough; the petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017).

We also presume that a state court's factual findings are correct unless they are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1034−35 (11th Cir. 2022) (en banc). Our review is limited to what the parties presented at the trial or at the state post-conviction proceedings. *See Shinn v. Ramirez*, 596 U.S. 366, 378 (2022).

### III

To prevail on an ineffective assistance of counsel claim, Mr. Rieber must show that his counsel's performance was deficient and that the deficient performance prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

An attorney's performance is constitutionally deficient if it "fell below an objective standard of reasonableness and was outside the wide range of professionally competent assistance." *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 928 (11th Cir. 2011) (internal citations omitted). "The standard for counsel's performance is 'reasonableness under prevailing professional norms.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (citation omitted).

The prejudice prong requires a showing that that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1148 (11th Cir. 2017) (internal citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citations omitted).

## A

Mr. Rieber argues that his counsel rendered ineffective assistance at the guilt phase by not pursuing a theory that he lacked the requisite intent for capital murder. He maintains that his counsel's failure to fully pursue the viable alternative of a voluntary intoxication defense was deficient performance which prejudiced him because evidence of his intoxication would have created a reasonable doubt as to the element of intent. And that, in turn, would have resulted in a conviction on the lesser included offense of manslaughter—a crime not punishable by death.

Specifically, Mr. Rieber argues that there was enough evidence of his intoxication (as presented at the Rule 32 hearing) that would have allowed the jury to find that he did not have the intent necessary for capital murder. He maintains that his counsel should have presented an intoxication/impairment defense instead of an alibi defense (which was not viable because he had clocked out of work before the murder). He contends that his counsel never asked him if he was intoxicated even though he had Dr. Rogers' report.

The state responds that the district court correctly concluded that the Alabama courts were not unreasonable in denying Mr. Rieber's claim of guilt-phase ineffective assistance for failing to pursue a manslaughter defense. The state notes that Mr. Rieber told police he was not at the convenience store and suggested he was not intoxicated to the point of being unaware of what he was doing. The state also points out that Mr. Rieber's counsel testified

that self-induced intoxication was not a "defense," but could be used as a mitigating circumstance, and said that intoxication could negate intent.

The district court concluded, in part, that Mr. Rieber could not show prejudice from his counsel's failure to pursue an intoxication/impairment defense through the testimony of witnesses who saw him using drugs and alcohol at a party the day of the murder. *See Rieber* VI, 2023 WL 5020257, at *8. Applying AEDPA deference to the Alabama courts' prejudice ruling, we agree with the district court.

First, Dr. Rogers' report—which noted no major psychiatric disorder but opined that reported memory loss could be due to substance abuse—was based on Mr. Rieber's own statements. As noted, Mr. Rieber did not testify at the Rule 32 hearing.

Second, although there was plenty of evidence that Mr. Rieber generally used drugs and had a narcotics addition, only two witnesses at the Rule 32 hearing—Jo Duffy and Sonya Williams—testified that Mr. Rieber used drugs (meth and marijuana) and drank alcohol at a party the day of the murder. But neither of them provided a time frame for Mr. Rieber's drug and alcohol use or the quantity of drugs consumed. Nor did they say that Mr. Rieber looked high or intoxicated. *See Rieber IV* at 12–13.

Third, Shauna Jenkins—Mr. Rieber's sister—testified at the Rule 32 hearing that she could tell when her brother was high. She also explained that, when she saw him just after 9:00 pm the day of the murder—recall that the murder took place just before 8:00

23-13958                Opinion of the Court                11

pm—he looked normal to her and did not appear to be high on drugs or alcohol.  *See id.* at 6–7.

Fourth, the state presented evidence at trial that Mr. Rieber had done certain things which cast doubt on a claim of voluntary intoxication/impairment.  He had purchased a gun a week before the murder.  And he had had been "casing" the convenience store several days before the murder and on the day of the murder.  *See Rieber VI*, 2023 WL 5020257, at *1.

We acknowledge Dr. Stalcup's opinion at the Rule 32 hearing that Mr. Rieber did not know what he was doing on the night of the murder.  But we are not conducting *de novo* review, and the Alabama Court of Criminal Appeals ruled that the evidence presented at the Rule 32 hearing—even if it had been presented at trial—would not have entitled Mr. Rieber to a jury instruction on the lesser-included offense of manslaughter.  *See Rieber V* at 17 ("Furthermore, the evidence Rieber offered at the Rule 32 hearing in support of a voluntary-intoxication theory did not establish that he would have been entitled to a lesser-included-offense manslaughter instruction.").  As a general matter, federal courts conducting habeas review cannot second-guess a state court's interpretation of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1997); *Reaves v. Sec'y, Fla. Dep't of Corr.*, 717 F.3d 886, 903 (11th Cir. 2013); *Pietri v. Fla. Dep't of Corr.*, 641 F.3d 1276, 1284 (11th Cir. 2011).

In any event, there was no testimony at the Rule 32 hearing about exactly when Mr. Rieber used drugs at the party or exactly what quantities of drugs he consumed.  And there was also no

evidence that Mr. Rieber appeared high or intoxicated at around the time of the murder; to the contrary, the sister of Mr. Rieber testified that when she saw him after 9:00 pm the night of the murder, he seemed normal.  Under the circumstances, Alabama law does not require the giving of an instruction on manslaughter. *See, e.g., Floyd v. State*, 289 So.3d 337, 417–18 (Ala. Crim. App. 2017) ("Similarly, here, we find no error on the part of the trial court in refusing to instruct the jury on voluntary intoxication and reckless manslaughter.  There was evidence indicating that Floyd drank alcohol and shared with Roy James approximately seven grams of cocaine; however, that evidence indicated that Floyd's consumption of alcohol and cocaine began around 11:00 a.m. on January 1, 2011, over 12 hours before the murder, and ended almost 5 hours before the murder, around 8:00 p.m. on January 1, 2011.  There was no evidence presented as to how much alcohol Floyd drank, how much of the seven grams of cocaine Floyd ingested, what effects the alcohol and the cocaine had on Floyd, or how long those effects lasted.  There was also evidence indicating that Floyd appeared intoxicated at around 8:00 p.m. on January 1, 2011, and that he used methamphetamine at that time.  However, no evidence was presented as to how much methamphetamine Floyd ingested, what effects the methamphetamine had on him, or how long those effects lasted.").

Under AEDPA deference, the question for us is whether fair-minded jurists could agree with the guilt-phase prejudice determination of the Alabama courts. *See Shinn v. Kayer*, 592 U.S. 111, 120–22 (2020).  On this record, the answer to that question is yes.  The

23-13958                Opinion of the Court                13

determination by the Alabama courts that Mr. Rieber suffered no prejudice from his counsel's failure to pursue a voluntary intoxication/impairment defense was not unreasonable. *Cf. Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) ("To prevail on his ineffective-assistance claim, Mirzayance must show, therefore, that there is a 'reasonable probability' that he would have prevailed on his insanity defense had he pursued it.").

**B**

Mr. Rieber contends that his counsel rendered ineffective assistance at the penalty phase by not presenting mitigating evidence of his intoxication at the time of the offense. He argues that his counsel's failure to adequately investigate and present this type of mitigating evidence constituted deficient performance, and that he was prejudiced by that deficient performance because he would not have been sentenced to death had the evidence been presented.

In support of his claim, Mr. Rieber argues that at the penalty phase his counsel relied on Dr. Rogers' report but did not try to obtain corroborating evidence of his intoxication. He also asserts that—having chosen to put intoxication before the jury and the trial court—counsel had an obligation to corroborate that report. This is particularly so, he maintains, given that the trial court stated that there was no corroboration. He notes that counsel had two months after the guilty verdict to find mitigating evidence that corroborated Dr. Rogers' report and presented none.

The state responds that the district court correctly ruled that the Alabama courts were not unreasonable in rejecting this

ineffectiveness claim.  In the state's view, the district court correctly concluded that the Alabama courts' decision on performance was not unreasonable.  The state also argues that Mr. Rieber cannot show prejudice due to the trial court's findings about what he did, including buying a gun one week before the murder, casing the store, stalking the victim, and shooting her a second time in the head despite having already taken the money from the cash register.

We agree with the district court that under the standard set out in cases like *Kayer*, 592 U.S. at 120–22, Mr. Rieber has not shown that the Alabama courts' determination as to prejudice on the penalty-phase ineffectiveness claim was unreasonable:

> This court need address only the prejudice prong of this claim.  In this case, the state . . . courts found that Mr. Rieber failed to establish prejudice because the evidence he presented at the Rule 32 hearing would still not have convinced the sentencing court to impose a life sentence.  Mr. Rieber contends that this conclusion was unreasonable because the evidence proved that he was in the habit of consuming hard drugs and that he consumed hard drugs on the day of the murder.
>
> The evidence presented at the Rule 32 evidentiary hearing corroborates the part of Dr. Rogers' report reciting Mr. Rieber's history of drug use.  The evidence also corroborates Mr. Rieber's claim that he consumed hard drugs and alcohol on the day of the murder.  But it does not corroborate Mr. Rieber's

claim that he was intoxicated at the time of the murder. The evidence that Mr. Rieber used drugs on the day of the murder was limited to evidence that Mr. Rieber attended a party where drugs were being used, one witness saw him snorting meth, smoking marijuana, and drinking alcohol at an unspecified time, and one witness *might* have seen him smoking marijuana and drinking around 6:30 or 7 P.M. Multiple witnesses testified that they had never seen Mr. Rieber black out from drug use. And Mr. Rieber's sister testified that she was familiar with how Mr. Rieber acted when he was high and that when she saw him about an hour after the murder, he did not appear to be intoxicated. It was not unreasonable for the state court to find as a fact that this evidence failed to establish that Mr. Rieber was intoxicated when he committed the murder.

Under *Wiggins* [*v. Smith*, 539 U.S. 510 (2003)]—a case that addressed the prejudice prong *de novo*—the question is whether, balanced against the aggravating evidence, the omitted mitigating evidence would have influenced the sentencer's assessment of the defendant's moral culpability. *See* 539 U.S. at 535. In that case, the only mitigating evidence presented to the jury was that the petitioner had no prior convictions and the aggravating evidence was weak. *Id.* at 537–38. The omitted mitigating evidence was that the petitioner was severely physically and sexually abused from an extremely young age. *Id.* at 516–17. Similar evidence was omitted in other cases in which

federal courts have found an unreasonable application of *Wiggins* based on a failure to investigate and present mitigating evidence. *See Williams v. Allen*, 542 F.3d 1326, 1342–43 (11th Cir. 2008) (finding prejudice based on mitigating evidence that as a child, the petitioner was repeatedly severely beaten with deadly weapons, deprived of food and clothing, and did not receive care relating to basic hygiene and medical needs).

By contrast, the mitigating evidence that trial counsel did not present to Mr. Rieber's sentencing court is weak: it consisted of evidence that Mr. Rieber had a history of using hard drugs and alcohol and that he used some drugs and alcohol on the day he murdered Ms. Craig. Trial counsel did present evidence that Mr. Rieber had a reputation for good character and had no history of violence and that a jury had, by majority vote, recommended a life sentence.

But the aggravators were strong. The state court found that—in addition to committing the murder during a robbery—Mr. Rieber planned the crime in advance with the intent to kill Ms. Craig and killed her while she was defenseless, in pain, and posed no threat to him. Mr. Rieber does not challenge these findings. Moreover, some of the omitted evidence highlighted misconduct of which the sentencer was not aware, such as Mr. Rieber's history of selling drugs and his involvement with a fourteen-year-old girl who soon began using drugs with him. . . .

23-13958                Opinion of the Court                17

[*S*]*ee Evans v. Sec'y, Dep't of Corr.,* 703 F.3d 1316, 1327 (11th Cir. 2013) (accepting as reasonable a state court's rejection of a similar claim where the mitigating evidence "was a two-edged sword or would have opened the door to damaging evidence") (quotation marks omitted); *Windom v. Sec'y, Dep't of Corr.,* 578 F.3d 1227, 1251 (11th Cir. 2009) ("[A]ny potential benefit to be gained by presenting the relatively weak mitigating evidence in [the petitioner]'s case would have been severely undercut by rebuttal evidence of his own misconduct . . . .").

To find the state court[s'] determination on the prejudice prong unreasonable, the court would have to conclude that no reasonable jurist could have found a lack of prejudice. *See Brooks v. Comm'r, Ala. Dep't of Corr.,* 719 F.3d 1292, 1300 (11th Cir. 2013). But a reasonable jurist could conclude that the omitted evidence would not have changed the sentencing court's mind. Accordingly, the state courts' findings on the prejudice prong were reasonable under *Strickland* and *Wiggins*, and Mr. Rieber is not entitled to habeas relief on this claim.

*Rieber VI*, 2023 WL 5020257, at *10–*11 (record citations and footnote omitted).

## IV

The district court's denial of Mr. Rieber's habeas corpus petition is affirmed.

18                         Opinion of the Court                    23-13958

**AFFIRMED.**